IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAPELL MCDONALD, et al.,<br>Plaintiffs | : <br> : <br> : | CIVIL ACTION |
| v. | : | |
| DARBY BOROUGH, et al.,<br>Defendants | : <br> : <br> : | NO. 07-4588 |

FILED

OCT 3 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### MEMORANDUM AND ORDER

GENE E.K. PRATTER, J.                                                                                   OCTOBER 2, 2008

Chappell McDonald, Jeffery King and Ericka Watkins, sitting in Mr. McDonald's parked car in Philadelphia, were approached by several Darby Borough, Pennsylvania police officers. The police officers were outside their jurisdiction, ostensibly investigating a Darby Borough resident's complaints concerning identity theft and credit card fraud. Mr. McDonald, Mr. King and Ms. Watkins assert that the officers had no legitimate justification for detaining and questioning them, and on November 1, 2007, they filed suit against Darby Borough Police Lt. Richard Gibey, Detective Domenic Dellabarbra, and Detective Brian Pitts, as well as Darby Borough. Mr. McDonald, Mr. King and Ms. Watkins assert federal claims pursuant to 42 U.S.C. § 1983 for violations of their Fourth Amendment and due process rights, as well as state law claims of assault, intentional infliction of emotional distress, false arrest and false imprisonment. The Defendants have filed a Motion for Summary Judgment, which Plaintiffs oppose.

1

## I. LEGAL STANDARD

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable fact-finder could possibly hold in the non-movant's favor with regard to that issue. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. Celotex, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it

is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

## II. BACKGROUND

To describe the background of this case, the Court sets out those facts of record that are undisputed. Moreover, the facts are construed in the light most favorable to the non-moving parties. The Court disregards those factual allegations that Mr. McDonald, Mr. King and Ms. Watkins make without any evidentiary support from the record. See, Celotex, 477 U.S.at 322-23; Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment). The following factual recitation separately notes those instances where Plaintiffs dispute factual contentions made by Defendants, but provide no evidentiary basis from the record for those disputes, and, in that case, the Defendants' factual contentions are treated as undisputed. See, Blaylock v. City of Philadelphia, 504 F.3d 405, 413 (3d Cir. 2007) (citing Anderson) (when the record contradicts a party's description of the facts, it does not create a genuine dispute). The Court has accepted as true all other factual contentions made by Plaintiffs and construed them in the light most favorable to them.

On February 22, 2006, Mr. McDonald, Mr. King, and Ms. Watkins were seated in a car parked on the 3200 block of Defense Terrace in Philadelphia. Darby Borough Police Lt. Gibney, Det. Dellabarbra, and Det. Pitts approached the car. The officers assert that they approached Plaintiffs as part of an ongoing investigation into stolen identification and credit card fraud.

3

Plaintiffs counter that the police officers unconstitutionally detained them without probable cause.

Earlier the same month, a complainant named Keith Smythe[1] had reported to the Darby Borough Police Department that someone had stolen his identity and, using his identification, purchased three cellular phones from a T-Mobile store in Philadelphia. Mr. Smythe gave officers three telephone numbers associated with the phones.

Darby Borough Police officers began an investigation and obtained call records for the three phones. Officers went to the T-Mobile store, and the clerk said that she had sold the

---

[1] Plaintiffs assert in their supplemental filing that Mr. Smythe is the son of Darby Borough Police Chief Robert Smythe and does not live in the Borough. See, e.g., Plaintiffs' Supplement to Their Answer ("Supplement") §§ I.2 - I.3. Plaintiffs argue that "the only thing causing the Darby Borough police to get involved in this posse is the fact that the defendants' boss, the police chief, is the dad of the complainant, who lives in another jurisdiction." Id. § I.3. Plaintiffs allege that "[t]here is no reference in any of Defendants' exhibits to any relation Keith Smythe [has] to Darby Borough; no reference to an address or work address there." Supplement § I.2. Although the parties agree that Mr. Smythe is the Darby Borough Police chief's son, see, Tr. 9/17/08 at 4:12, Plaintiffs' assertions about defense exhibits are mistaken. Indeed, the police report indicates that on the date Mr. Smythe made his initial complaint to the Darby Borough Police, he gave his address as 1212 Wycombe Avenue in Darby Borough. See, Defendants' Motion for Summary Judgment ("Motion"), Ex. D1 at 1.

Further, Plaintiffs assert that the Darby Borough Police Department had no right to investigate Mr. Smythe's allegations because Mr. Smythe was, in fact, not a resident of the Borough and because none of the alleged crimes took place in the Borough. Plaintiffs assert that records printed from the Lexis/Nexis database prove that Mr. Smythe is not a Darby Borough resident. See, Plaintiffs' Answer to Defendants' Motion for Summary Judgment ("Response"), Ex. 2. Again, Plaintiffs are mistaken.

The database records indicate that Mr. Smythe purchased a home at 1212 Wycombe Avenue in Darby Borough in October 2005, id., and then purchased a home at 266 North Oak Avenue in Clifton Heights in summer 2006. Id. At the time Plaintiffs printed the database records, presumably sometime in 2008, Lexis/Nexis indicated that Mr. Smythe lived at the home in Clifton Heights, but his current residence is of no concern. Only Mr. Smythe's address in February 2006, when he made his complaints to the Darby Borough Police Department, is relevant here. The record clearly indicates that Mr. Smythe lived at 1212 Wycombe Avenue in Darby Borough at that time.

phones to a black male in a wheelchair who was accompanied by two other black men.[2] The clerk told the officers that the purchaser had asked her to change the billing address on the phones to 3231 East McMichael Street in Philadelphia because he was moving soon.

On February 21, 2006, Mr. Smythe again contacted the Darby Borough Police Department. He told officers that someone had opened a credit card account in his name at the Bailey, Banks and Biddle store at the King of Prussia Mall. Whoever opened the account had fraudulently charged a Breitling watch for approximately $4,500 to Mr. Smith.

Darby Borough Police officers contacted the Bailey, Banks and Biddle store the morning of February 22, 2006. The salesman who sold the watch in question told the officers that a black man between 25 and 30 years old with short hair and a goatee came into the store in a wheelchair and explained that he had recently suffered a stroke. He was accompanied by another young man, who had a teardrop tattoo under his left eye. The man in the wheelchair showed the salesman a driver's license and credit card in the name of Keith Smythe, and the salesman sold him the watch.

The afternoon of February 22, 2006, the investigation into the alleged fraud led Defendant officers to a housing project complex in northern Philadelphia. While the officers were observing the area, Det. Dellabarbra noticed Mr. McDonald's car. He observed a black male with a goatee sitting in the parked vehicle and saw a wheelchair in the back of the car.

The officers approached Mr. McDonald's car, and Mr. McDonald, who was in the

---

[2]Darby Borough Police officers received a surveillance video from the T-Mobile store that depicted a black male in a wheelchair accompanied by another man. See, Motion, Ex. D-2(A)-(C). However, officers did not receive this video until February 23, 2006, the day after the incident at issue. See, Motion, Ex. D-1.

driver's seat, identified himself. He gave the officers a California driver's license, and explained that his Pennsylvania driver's license was suspended. He also told the officers that the wheelchair in his car belonged to him.[3]

The officers used their communications equipment to run a background check on Mr. McDonald. The check revealed that Mr. McDonald was "a wanted subject who should be considered armed and dangerous." Motion, Ex. D-1 at 11. The check also revealed that Mr. McDonald had an outstanding warrant from South Carolina on a gun charge and a drug sale charge.[4] Id. As a result, the officers asked Mr. McDonald to step out of his car, and they patted

---

[3] The exact details of the officers' initial conversation with Mr. McDonald remain in dispute. Defendant police officers assert that after obtaining Mr. McDonald's identification, they informed him that they were conducting an investigation, and he stated, "what a rape?" Motion, Ex. D-1 at 11. Mr. McDonald maintains that Lt. Gibney wrongful accused him of rape after approaching his car. Complaint ¶¶ 6, 27.

[4] Plaintiffs assert that the officers did not run a background check on Mr. McDonald until returning to the station later that afternoon. See, Supplement ¶ 15; Tr. 9/17/08 at 26. They note that the printed report showing a warrant in South Carolina was printed on February 22, 2006 at 17:17 hours (5:17 p.m.), see, Motion, Ex. 3, while the actual traffic stop occurred sometime just after noon that day. Accordingly, Plaintiffs argue that the officers did not actually have the information about Mr. McDonald's South Carolina warrant until after he was released. See, Supplement ¶ 15.

However, the police report states that after the Darby Borough officers learned about Mr. McDonald's warrant, they asked officers from the Philadelphia Police Department to respond to the scene. Motion, Ex. D-1 at 11-12. The police report does not mention printing any type of report while the officers were in the field. It simply says that the officers conducted a check from their vehicle and learned of the warrant. Id. Accordingly, Defendants assert that the printed report from later that day is nothing more than corroboration of what the officers earlier learned while they were on the scene.

Again, Plaintiffs' own evidence supports Defendants' interpretation of the evidence. Plaintiffs submitted to the Court a cassette tape of the radio call between a Delaware County Pennsylvania police radio operator and Philadelphia Police Department radio operator on the afternoon in question. See, Supplement, Ex. 4. In the call, the Delaware County operator requests that Philadelphia Police officers respond to 3202 Defense Terrace in Philadelphia. He states that Darby Borough officers "have a wanted subject there, in custody, and they want one of [Philadelphia's police] cars to respond there." Id. The Philadelphia operator asks at the end of

down his person. While Mr. McDonald was outside the car, the officers found marijuana in his possession and confiscated the drugs.[5]

Defendants assert that after Philadelphia Police officers arrived at the scene, all of the law enforcement officers learned that South Carolina does not extradite wanted persons from Pennsylvania. Motion, Ex. D-1 at 12. The police officers told Mr. McDonald, Mr. King and Ms. Watkins that they were free to leave.

## III. DISCUSSION
### A. Federal Law Claims
#### 1. Fourth Amendment Seizure

Mr. McDonald, Mr. King and Ms. Watkins assert that they were detained without probable cause in violation of the Fourteenth Amendment. In their Response to the pending Motion, Plaintiffs seek to rely on Pennsylvania's Municipal Police Jurisdiction Act, 42 Pa. C.S. § 8953 ("MPJA"), as evidence of the lack of probable cause. Response § III.A[6] ("The relevance of the MPJA to this litigation is not to establish an independent state cause of action under that statute, but that it shows that the Defendant police officers in this case were outside their

---

the call: "And [Lt. Gibney is] on location with an arrest?" The Delaware County operator responds, "Right. At 3202 Defense Terrace." Id.
 Even when viewed in the light most favorable to Plaintiffs, the evidence cannot support the assertion that Defendant officers did not run a background check on Mr. McDonald prior to contacting the Philadelphia Police Department for assistance.

[5]Mr. McDonald was never charged with drug possession or prosecuted.

[6]Plaintiffs do not use page numbers in their Response. Also, there are two sections marked III.A. This citation is to the second such section.

jurisdictional limits, and had no right to seize, detain or arrest Plaintiffs.") Accordingly, Mr. McDonald, Mr. King and Ms. Watkins seem to argue that because Defendant police officers detained them outside of Defendants' primary jurisdiction and in apparent violation of Pennsylvania's Municipal Police Jurisdiction Act, 42 Pa. C.S. § 8953, Plaintiffs' constitutional rights to be free from unlawful search and seizure were violated.

It is well-established that "the Fourth Amendment is not implicated simply because an individual violates state law." Armstead v. Township of Upper Dublin, 347 F. Supp. 2d 188, 194 (E.D. Pa. 2004) (discussing an arrest outside the officer's jurisdiction in apparent violation of the MPJA). See also, Baker v. McCollan, 442 U.S. 137, 144 (1979). The court in Carter v. Bartle, 1990 U.S. Dist. LEXIS 13596 (E.D. Pa. Oct. 9,1990), held that unless police officers arrested the plaintiff without probable cause, "no constitutional right was implicated by the fact that [the officers] arrested plaintiff beyond the geographical boundaries of their primary jurisdiction" and, thus, in apparent violation of the MPJA. Id. at *2. Violation of the MPJA simply does not demonstrate violation of constitutional rights. Id. Accordingly, in evaluating Plaintiffs' § 1983 claim, the Court must consider only whether the Defendant police officers had reasonable suspicion to conduct an investigatory stop of Plaintiffs.

Further, Plaintiffs' focus on the alleged link between Mr. Smythe and Defendant police officers may not play a role in the Court's analysis of the officers' behavior. The U.S. Supreme Court has unequivocally held that, outside the limited context of inventory searches and administrative inspections, an individual officer's motivation will not "invalidate[] objectively justifiable behavior under the Fourth Amendment." Whren v. U.S., 517 U.S. 806, 812 (1996). Thus, any relationship between Mr. Smythe and the Darby Borough Police chief is immaterial to

8

the evaluation of the reasonableness of Plaintiffs' detention.

"[N]ot every encounter between the police and a citizen constitutes a seizure within the meaning of the Fourth Amendment." U.S. v. Williams, 413 F.3d 347, 352 (3d Cir. 2005). "[T]he Supreme Court has held that for there to be a seizure, either the police must apply physical force to the person being seized, or the person must submit to an assertion of police authority." Id. To be sure, a submission to police authority necessarily entails a restriction of movement. "A seizure occurs whenever an officer restrains the freedom of a person to walk away." Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002) (quotation and citation omitted). All parties agree that Plaintiffs were "seized" under the Fourth Amendment; however, they do not agree as to the exact nature of the seizure. Defendants assert that Mr. McDonald, Mr. King and Ms. Watkins were merely detained, not arrested, while Plaintiffs assert that they were subject to an unconstitutional arrest.

The facts as presented to the Court support the assertion that Defendant police officers initially subjected Mr. McDonald, Mr. King and Ms. Watkins to an investigatory detention. The officers were observing a specific area they independently had linked to criminal activity when they saw a man matching a suspect's general description and approached him to conduct further investigation. Because the man they wanted to question was inside a parked vehicle with two other people, the officers necessarily approached those individuals as well. Mr. McDonald, Mr. King and Ms. Watkins have introduced no evidence that they were placed under arrest at the moment when the officers first approached Mr. McDonald's car. The evidence shows only that the officers approached the parked car and made a statement about an investigation.

Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a law enforcement officer may

9

conduct a brief, investigatory stop when that officer has "a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Although the reasonable suspicion standard is less demanding than that for probable cause, the Fourth Amendment requires any officer making an investigatory stop to have some objective justification for the stop. U.S. v. Sokolow, 490 U.S. 1, 7 (1989). An investigative stop may be conducted without probable cause as long as the officer conducting the stop is able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Karnes v. Skrutski, 62 F.3d 485, 492 (3d Cir. 1995) (quoting Terry, 392 U.S. at 21). "In evaluating the validity of a stop..., [the Court] must consider 'the totality of the circumstances – the whole picture.'" Sokolow, 490 U.S. at 8 (quoting U.S. v. Cortez, 449 U.S. 411, 417 (1981)).

The record indicates that the Defendant police officers were conducting surveillance in Philadelphia in connection with alleged credit card fraud and identity theft when they observed Plaintiffs in Mr. McDonald's parked car. Sales personnel from both T-Mobile and Bailey, Banks & Biddle had described the identity theft suspect as a young black man who used a wheelchair. The Bailey, Banks & Biddles salesperson had said that the man had a goatee and short hair. The officers observed that Mr. McDonald had a goatee and was transporting a wheelchair in the exact location where the officers were investigating the fraudulently obtained cellular telephones. Such facts support the officers' decision to approach Mr. McDonald to obtain more information.

The Fourth Amendment prohibits a police officer from arresting a person without probable cause. Paff v. Kaletenbach, 204 F.3d 425, 435 (3d Cir. 2000). However, reasonable suspicion can ripen into probable cause. "Probable cause to arrest exists when the facts and

10

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997) (citations omitted).

To assert a §1983 false arrest claim, a plaintiff must demonstrate that the arresting officer lacked probable cause to make the arrest. Garcia v. County of Bucks, Pennsylvania, 155 F. Supp. 2d. 259, 265 (E.D. Pa. 2001). See also, Dowling v. City of Philadelphia, 855 F.2d 136,141 (3d Cir. 1998) (holding that it is well established that when an officer makes an arrest pursuant to a facially valid warrant, the officer is deemed to have acted with probable cause). As such, a §1983 claim for false imprisonment will fail if the arrest was based on probable cause. Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 852-53 (E.D. Pa. 2000). Even assuming that Mr. McDonald's encounter with the Defendant police officers shifted from an investigatory stop to an arrest situation during the course of their interaction, the officers had probable cause to arrest Mr. McDonald after they learned about the outstanding South Carolina warrant and, thus, were entitled to arrest him. See, e.g., U.S. v. McDonald, 606 F.2d 552, 553-54 (5th Cir. 1979) ("[C]ases uniformly recognize that NCIC printouts are reliable enough to form the basis for the reasonable belief which is needed to establish probable cause for arrest.")

Once Defendant police officers learned that South Carolina does not extradite wanted persons from Pennsylvania, they released Mr. McDonald. Accordingly, Mr. McDonald was never detained or arrested in violation of his Fourth Amendment rights, and he cannot pursue a Fourth and Fourteenth Amendment claim against the officers pursuant to § 1983.

However, when considered in the light most favorable to Plaintiffs, the record suggests that the officers also detained Mr. McDonald's companions, Mr. King and Ms. Watkins, by

ordering them to stay inside Mr. McDonald's car while the officers conducted their investigatory stop. Even though the initial investigatory detention of Mr. McDonald was reasonable for the reasons discussed above, the detention of Mr. King and Ms. Watkins during the investigation and arrest of Mr. McDonald may have violated their constitutional rights.

Detention subsequent to a Terry stop "must not be excessive in length or overly intrusive; the officers' actions must be reasonably related in scope to circumstances justifying the initial interference." Stewart v. Trask, 2003 U.S. Dist. LEXIS 11174, at *20-21 (E.D. Pa. June 27, 2003). Defendant police officers have not provided the Court with a record sufficient to determine whether Mr. King and Ms. Watkins were actually detained during the officers' investigation of Mr. McDonald, whether any such detention was excessively long, or whether any such detention was overly intrusive in regards to Mr. King and Ms. Watkins.[7] Although the imposition of having to remain in a vehicle is minimal, the Fourth Amendment protects citizens from any unconstitutional search or seizure. Accordingly, Mr. King's and Ms. Watkins' Fourth Amendment claims made pursuant to § 1983 survive summary judgment at this time.

**2. Due Process Violations**

Plaintiffs also seem to assert a § 1983 claim for violation of their due process rights. See, Complaint ¶ 34 ("...as well as deprivation of liberty without due process of law.") Read in the most generous manner, Plaintiffs' Complaint could be interpreted to allege that their detention by the police officers violated their substantive due process rights. "Claims of unreasonable search

---

[7]The record also is insufficient for the Court to consider the officers' assertion of qualified immunity. Accordingly, the Court will not rule on applicability of that defense at this time.

and seizure are, however, governed by explicit constitutional text in the Fourth Amendment and may not, therefore, by brought as claims for violation of the right to substantive due process." Piskanin v. Hammer, 2005 U.S. Dist. LEXIS 28135 (E.D. Pa. Nov. 14, 2005) (citing Albright v. Oliver, 510 U.S. 266, 272 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"(citation omitted))). Because the Fourth Amendment clearly governs claims of unlawful detention, any Fourteenth Amendment claim alleging a violation of substantive due process rights must be dismissed because the conduct at issue falls explicitly within the Plaintiffs' Fourth Amendment claim.

## B. State Law Claims

### 1. Assault

In their Complaint, Mr. McDonald, Mr. King and Ms. Watkins assert without elaboration that they were subject to "acts of assault [and] intimidation." Complaint ¶ 20. They aver that they were "arrested without probable cause, being ordered to stay in the parked vehicle." Id. ¶ 22. Plaintiffs assert that because of such detention, "the fear of imminent physical contact if they attempted to leave was not only true subjectively, but objectively." Response § III.B.1.

Under Pennsylvania law

> an assault may be described as *an act* intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery. Words in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so. (emphasis in original) (citations omitted).

13

Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960).  See also, Brillhart v. Sharp, 2008 U.S. Dist. LEXIS 55624, at *19 (E.D. Pa. July 21, 2008) (citing Cucinotti).  The Pennsylvania Supreme Court held in Cucinotti that police officers' threats to beat the plaintiffs if they did not leave a particular area immediately did not constitute battery because they were mere threats without further affirmative action.  159 A.2d at 217.

Here, Mr. McDonald, Mr. King and Ms. Watkins have not alleged even verbal threats.  Considered in the most generous light, the facts as presented to the Court reveal that Mr. McDonald, Mr. King and Ms. Watkins were instructed to remain in the car in which they were sitting.  They were detained by Darby Borough police officers for less than one hour, and then they were released.  There is no evidence that the officers threatened or otherwise menaced them in *any* manner, and there certainly is no evidence that the officers intentionally took any affirmative action in relation to any perceived threats.  Accordingly, there is no interpretation of the record that would allow the Court to find that Defendants conducted any "act intended to put another person in reasonable apprehension of an immediate battery."  Cucinotti, 159 A.2d at 217.  The Court will dismiss this claim in its entirety.

### 2. Intentional Infliction of Emotional Distress

Plaintiffs do not oppose the dismissal of their claim for intentional infliction of emotional distress.  See, Response n.4.  Accordingly, the Court will dismiss this claim.

### 3. False Arrest and False Imprisonment

The Pennsylvania torts of false arrest and false imprisonment are essentially the same

actions. For such actions to succeed, a plaintiff must demonstrate that he was arrested without probable cause, for example, through use of a facially invalid arrest warrant. <u>Olender v. Township of Bensalem</u>, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999). "Detainment and confinement constitute the gravamen of the civil wrong committed by an individual who illegally asserts or employs authority over another while purportedly enforcing the law. This civil wrong can be denominated as either false arrest or false imprisonment." <u>Gagliardi v. Lynn</u>, 285 A.2d 109, 110 (1971). "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (Pa. 1994).

As explained above, Defendant police officers initially detained Mr. McDonald to conduct an investigatory stop. <u>See</u>, <u>supra</u> § III.A.1. Mr. McDonald has presented no evidence to permit the Court to conclude that he was arrested at that moment. When considered in the light most favorable to Mr. McDonald, the record could suggest that he was arrested at the point when Defendant police officers learned of Mr. McDonald's outstanding South Carolina warrant and sought assistance from the Philadelphia Police Department. However, the officers had probable cause to arrest Mr. McDonald at that point and, thus, no false arrest occurred.

Because the state law claims of false imprisonment and false arrest require that an arrest was effectuated, Mr. King's and Ms. Watkins' claims for false imprisonment and false arrest must be dismissed. When considered the light most favorable to Plaintiffs, the record indicates that Mr. King and Ms. Watkins may have been detained by Defendant police officers during a legal investigatory stop. However, Mr. King and Ms. Watkins have presented no evidence that they were interrogated, accused of any crimes, removed from the car, or otherwise subjected to any police activity that would even suggest the effectuation of their arrest. Accordingly, the

Court will dismiss all of Plaintiffs' claims for false imprisonment and false arrest.

## C. Municipal Liability

### 1. Federal Claims

Plaintiffs have asserted <u>Monell</u> claims against Defendant Darby Borough. In <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978), "the Supreme Court held that § 1983 may give rise to municipal liability when a constitutional violation occurs as a result of a policy, regulation, or decision officially adopted by the municipality or informally adopted by custom." <u>Benckini v. Coopersburg Police Department</u>, 2004 U.S. Dist. LEXIS 14663, at *18 (E.D. Pa. July 27, 2004) (citing <u>Monell</u>). However, municipalities cannot be held vicariously liable pursuant to 42 U.S.C. § 1983 because under this statute there is no <u>respondeat superior</u> liability for the actions of municipal agents. <u>Sanford v. Stiles</u>, 456 F.3d 298, 314 (3d Cir. 2006) (citing <u>Monell v. Dept. of Soc. Serv.</u>, 436 U.S. 658, 691 (1978)) "[A] municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." <u>Id.</u> Thus, it is not enough to show that a constitutional violation has occurred. To establish liability, the plaintiff must prove that the violation was the result of a municipal policy or custom. <u>Id.</u>

The existence of a policy or custom can be established one of in two ways, namely, (1) by showing that a "'decisionmaker possessing final authority to establish municipal policy with respect to the action' issued an official statement of policy," <u>Jiminez v. All American Rathskeller</u>, 503 F.3d 247, 250 (3d Cir. 2007) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)), or (2) by demonstrating that a "custom" exists "when, though not authorized by law, the 'practices of state officials [are] so permanent and well settled' that they operate as law."

Id. (quoting Monell, 436 U.S. at 690).

Plaintiffs have failed to introduce evidence that any policies or customs of Darby Borough resulted in the violation of their constitutional rights. In fact, Plaintiffs have not identified any policy or custom that could have resulted in their alleged injuries. Mr. McDonald, Mr. King and Ms. Watkins allege that

> The unlawful arrest, assault, search, imprisonment and intimidation in this case were the direct result of Defendants' pattern, practice, and custom of subjected citizens such as Plaintiffs to unlawful seizure, arrest, assault, search, imprisonment, confinement, deprivation of liberty and intimidation in the absence of probable cause.

Response at I. However, nowhere in their submissions in this litigation do Plaintiffs provide any evidence of such "pattern, practice, [or] custom."

Further, even though Mr. McDonald, Mr. King and Ms. Watkins baldly assert that the police chief approved inappropriate police activity outside of his jurisdiction because his son had been wronged, they have produced *no* evidence at all that the police chief was in any way involved with or even aware of Defendant officers' actions. Even if the Court were to accept as true Plaintiffs' completely unsupported allegation that the police chief somehow abused his position and sent officers astray for personal reasons, such an allegation would necessarily lead to the conclusion that this was a special situation, not oft-repeated interjurisdictional action resulting from policy, practice or custom of the Borough or its law enforcement arm.

Because respondeat superior is not a basis for municipal liability under § 1983, the Court must dismiss all federal claims against Darby Borough.

### 2. State Law Claims

The only state law claims Mr. McDonald, Mr. King and Ms. Watkins assert against Darby Borough are claims for the intentional torts of assault, false arrest, false imprisonment and intentional infliction of emotional distress. Plaintiffs have agreed to the dismissal of their claim for intentional infliction of emotional distress, but not the other three claims. However, a municipality cannot be held liable under Pennsylvania law for intentional tortious conduct. Zernheld v. Lehigh County Office of Children & Youth Services, 659 A.2d 89, 90 (Pa. Cmwlth. 1995) (claim against a county children's services agency for intentional tort of fraud was barred by § 8542(a)(2), which declares that liability may be imposed against a local agency only for negligent acts); Perez v. City of Bethlehem, 1996 U.S. Dist. LEXIS 9394, at *10 (E.D. Pa. July 2, 1996) ("Section 8542(a)(2) declares that liability may be imposed on a local agency only for 'negligent acts' of the local agency or an employee of the local agency, and 'negligent acts' excludes 'acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.'")

The Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, protects municipalities from liability for damages resulting from acts of the local agency or its employees. The act allows for liability for negligent acts, but states that negligence does not include "willful misconduct." 42 Pa. C.S. § 8542. Further, the act waives immunity under only eight specified categories, including vehicle liability, utility service facilities, streets, and sidewalks. See, 42 Pa. C.S. § 8542(b). These exempt categories do not encompass any of the intentional tortious conduct Mr. McDonald, Mr. King and Ms. Watkins assert in this action. Accordingly, the Court must dismiss all state law claims against Darby Borough.

18

## IV. CONCLUSION

For the reasons set forth above, the Court will grant summary judgment for Defendants as to (1) Mr. McDonald's 42 U.S.C. § 1983 claim for violation of his Fourth Amendment rights, (2) Plaintiffs' 42 U.S.C. § 1983 claims for violation of due process rights, (3) Plaintiffs' state law claims for assault, (4) Plaintiffs' state law claims for intentional infliction of emotional distress, (5) Plaintiffs' state law claims for false imprisonment and false arrest, and (6) all claims against Darby Borough. The Court will deny the Motion as to Mr. King's and Ms. Watkins' 42 U.S.C. § 1983 claims against Defendants Gibey, Dellabarbra, and Pitts for violation of Plaintiffs' Fourth Amendment rights.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAPELL MCDONALD, et al., Plaintiffs | : : : | CIVIL ACTION |
| v. | : : : | |
| DARBY BOROUGH, et al., Defendants | : : : | NO. 07-4588 |

FILED
OCT 3 2008
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### ORDER

AND NOW this 2nd day of October 2008, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 11), Plaintiffs' Response (Doc. Nos. 14, 15) and Plaintiffs' Supplement (Doc. No. 17), it is HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows:

1) Mr. McDonald's 42 U.S.C. § 1983 claim for violation of his Fourth Amendment rights is DISMISSED;

2) Plaintiffs' 42 U.S.C. § 1983 claims for violation of due process rights are DISMISSED;

3) Plaintiffs' state law claims for assault, intentional infliction of emotional distress, false imprisonment, and false arrest are DISMISSED;

4) All claims against Darby Borough are DISMISSED.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE